**SIGNED THIS: January 24, 2012**

**Thomas L. Perkins**
**United States Chief Bankruptcy Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **IN RE:** | ) | |
| | ) | |
| **DENISE E. MARTIN,** | ) | **Case No. 11-82075** |
| | ) | |
| **Debtor.** | ) | |

**O P I N I O N**

Whether an above-median chapter 13 debtor with negative monthly disposable income is nevertheless required to propose a five-year plan, an issue that has sharply divided courts, turns on the interpretation of the phrase"applicable commitment period." This Court determines that a five-year plan is required of every above-median debtor as a condition of confirmation.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Debtor, Denise E. Martin (DEBTOR), works as an accounting assistant for a sizeable accounting firm. She has been employed there for nineteen years and earns a gross monthly salary of $3,301.40 (per Schedule I), which annualizes to a sum of $39,616.80.

She is single with no dependents, having been divorced from her ex-husband, Brian Martin (BRIAN), for several years. They have no children together.

With her petition, the DEBTOR completed the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income (Official Form 22C). Part II of Form 22C calculates the section 1325(b)(4) commitment period by comparing a debtor's annualized current monthly income with the median family income, based upon recent government-compiled statistics, for the debtor's state of residence and household size. As calculated on her Form 22C, the DEBTOR'S annualized current monthly income of $48,685.56 is over the applicable Illinois median for a household size of one which is $46,355.00. As a result, line 17 of Form 22C provides that for purposes of section 1325(b)(4), the DEBTOR'S "applicable commitment period is 5 years."

Part IV of Form 22C calculates deductions from income and includes deductions for expense amounts, both actual and standardized. Part IV concludes by subtracting all allowed deductions and adjustments from a debtor's total current monthly income to determine an amount on line 59 for monthly disposable income under section 1325(b)(2). The amount shown on line 59 on the DEBTOR'S Form 22C is a negative number, -$146.03.

Schedules I and J filed by the DEBTOR, which incorporate only current, actual amounts for income and expenses, reflect that her average monthly income exceeds her average monthly expenses by $150.01, so that her actual monthly net income is a positive figure equal to that amount. The amended chapter 13 plan filed by the DEBTOR proposes payments to the Trustee in the amount of $150.00 per month for 36 months.

On her schedule of unsecured creditors (Schedule F), the DEBTOR listed BRIAN as holding an unliquidated claim for "refund of maintenance" in the estimated amount of $40,000. BRIAN filed an objection to the amended plan, contending that all above-median debtors must propose a 5-year plan duration, so that the DEBTOR'S 3-year plan is not confirmable. BRIAN also contends that the amended plan fails to commit all of the DEBTOR'S projected disposable income since it omits a pension distribution that she will begin receiving in December, 2012. BRIAN also filed an adversary complaint to except his claim from discharge as one for fraud under section 523(a)(2)(A), alleging that the DEBTOR was overpaid maintenance when she failed to advise BRIAN or the divorce court that she was cohabiting with a third party. In his memorandum of law, BRIAN suggests the Court should follow *Baud v. Carroll,* 634 F.3d 327 (6th Cir. 2011), holding that "applicable commitment period" establishes a temporal or durational minimum for a plan to which there is no exception for above-median debtors whose line 59 monthly disposable income is a negative number on Form 22C.

The DEBTOR, in her memorandum, maintains that her applicable commitment period should be determined to be three years, not five, solely because line 59 on her Form 22C is a negative number. The DEBTOR alternatively contends that she should not be treated as a true above-median filer since her above-median status determined on Form 22C is based upon certain non-wage income received prepetition that she is now no longer receiving. She had been receiving maintenance payments from BRIAN until just before filing. Although those payments were terminated by prebankruptcy divorce court order, she was nonetheless required to include them on Form 22C, which captures all income

received during the six-month period before bankruptcy. *See* §§ 1325(b), 707(b)(2) and 101(10A). Since it is certain that she will no longer receive maintenance from BRIAN, the DEBTOR contends that the prepetition maintenance income should be excluded from the determination of whether she is an above-median or below-median filer. She argues that this result is supported by *Hamilton v. Lanning,* 130 S.Ct. 2464 (2010), and by *In re Davis,* 439 B.R. 863 (Bankr.N.D.Ill. 2010).

**ANALYSIS**

The term "applicable commitment period" is not defined in the definitions section of the Bankruptcy Code (§ 101) and appears in only two places: sections 1325 and 1329. The term is new as of 2005, having been introduced in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA). In order to ascertain what Congress intended when it used the term "applicable commitment period," it is helpful to understand how a durational minimum was applied to chapter 13 plans pre-BAPCPA.

The starting point is to recognize that the pre-BAPCPA Bankruptcy Code did not set down an absolute minimum duration for chapter 13 plans. A debtor was permitted to propose a plan that might last, for example, only for two years or one year or one month that could be confirmed if no one objected and if all applicable conditions of confirmation were satisfied. *See In re Torres,* 193 B.R. 319, 321 (Bankr.N.D.Cal. 1996).

In pre-BAPCPA practice, however, absent earlier full payment of all allowed claims, three years was the effective minimum, since any objection to confirmation by the trustee or an unsecured creditor triggered that temporal condition, as follows:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless,

as of the effective date of the plan –

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

11 U.S.C. § 1325(b)(1) (2004).

In this Court's experience, chapter 13 trustees have routinely and without exception objected to a plan of less than three years unless unsecured claims will be paid in full over a shorter duration. Those objections have been routinely allowed. So, in practice, plans paying less than 100% generally are not proposed for less than three years to avoid objection. *In re Than,* 215 B.R. 430, 436 n.12 (9th Cir.BAP 1997). There is little doubt that most courts treated the three-year period as a minimum duration for chapter 13 plans unless full payment occurs sooner. *See In re Phelps,* 149 B.R. 534, 537 n.3 (Bankr.N.D.Ill. 1993); *In re Fareed,* 262 B.R. 761, 765 n.2 (Bankr.N.D.Ill. 2001); *In re Krull,* 54 B.R. 375, 377 (Bankr.D.Colo. 1985).

In 2005, BAPCPA amended section 1325(b)(1)(B) as part of the implementation of the broader concept that above-median debtors are to be treated differently than below-median debtors in chapter 13 cases. The phrase "three-year period" was replaced with "applicable commitment period" and the phrase "to unsecured creditors" was added, as follows:

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Again for the purpose of implementing the new dichotomy between above and below-median filers, BAPCPA added a new paragraph to section 1325(b) that defines "applicable commitment period" as follows:

> (4) For purposes of this subsection, the "applicable commitment period"–
>
> (A) subject to subparagraph (B), shall be–
>
> (i) 3 years; or
>
> (ii) not less than 5 years ... [if the debtor is above-median] ...; and
>
> (B) may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

11 U.S.C. § 1325(b)(4). Thus, under BAPCPA, the applicable commitment period is 3 years for a below-median debtor and 5 years for an above-median debtor. Those periods may be shortened only to the extent that unsecured claims may be paid in full more quickly. In this Court's view, since the new term "applicable commitment period" replaced "three-year period" which was a durational term, it seems readily apparent that the purpose of the amendment was to carry forward the concept of a durational minimum for all chapter 13 filers, leaving the 3 years in place for lower income debtors, but imposing a longer 5-year term for higher earners.

All four courts of appeal that have considered the issue agree that section 1325(b) is a temporal requirement that sets a minimum plan duration, if a plan objection is filed, of five years for above-median debtors who have positive disposable income on line 59 of Form 22C. *Baud, supra*; *In re Tennyson,* 611 F.3d 873 (11th Cir. 2010); *In re Frederickson,* 545 F.3d 652 (8th Cir. 2008); *In re Kagenveama,* 541 F.3d 868 (9th Cir. 2008). These courts rejected

the viewpoint expressed by a number of bankruptcy courts that the "applicable commitment period" is only a multiplier. Under that interpretation, section 1325(b) would not require a debtor to propose a plan that lasts for the duration of the applicable commitment period, only that the plan provide for the payment of the monetary amount determined by multiplying the debtor's monthly disposable income times the number of months (36 or 60) in the applicable commitment period. *See, e.g., In re Lopatka,* 400 B.R. 433 (Bankr.M.D.Pa. 2009); *In re Williams,* 394 B.R. 550 (Bankr.D.Colo. 2008); *In re McGillis*, 370 B.R. 720 (Bankr.W.D. Mich. 2007). Neither the Supreme Court nor the Seventh Circuit Court of Appeals has yet addressed the issue.

A variety of arguments are addressed in the many cases that have interpreted the phrase "applicable commitment period." In this Court's view, none is stronger than that the temporal interpretation is consistent with pre-BAPCPA practice and there is nothing in the new statutory language or the legislative history to indicate that Congress intended a dramatic conceptual change such as the multiplier interpretation would effect.[1] This argument is thoroughly discussed by the Sixth Circuit in *Baud.* 643 F.3d at 341-44. This Court agrees with that persuasive reasoning, as well as the reasoning of Bankruptcy Judge Kenneth Meyers in *In re Nance,* 371 B.R. 358, 369-70 (Bankr.S.D.Ill. 2007). As the Supreme Court recognizes, pre-BAPCPA bankruptcy practice can be an important factor in interpreting the meaning of the provisions of BAPCPA since the Court "will not read the

[1] Chapter 13 plans now routinely provide that the debtor will pay to the trustee a set monthly amount for a set duration between 36 months and 60 months. If the multiplier interpretation was correct, debtors would presumably begin to propose plans with no stated durational term, since duration would no longer be a condition of confirmation. Nothing indicates Congress intended this result.

Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure." *Hamilton v. Lanning,* 130 S.Ct. 2464, 2473 (2010).

In contrast to the 5-year *maximum* durational limit for a chapter 13 plan set forth in section 1322(d), which protects debtors, section 1325(b)(1)'s durational *minimum* benefits creditors by requiring a debtor's "best efforts" at creditor repayment for at least three years as the *quid pro quo* for the broad discharge provided in chapter 13. *Nance,* 371 B.R. at 370. The BAPCPA amendment to section 1325(b)(1)(B) reflects the general policy that underlies many of BAPCPA'S provisions that more is expected from higher earning debtors. *See In re Musselman,* 379 B.R. 583, 590 (Bankr.E.D.N.C. 2007) (means test in chapter 13 reflects Congressional policy that eliminated the chance for above-median debtors to inflate actual living expenses to abuse the formula for determining projected disposable income).

From the time the means test concept was first proposed in 1997 by certain dissenters to the Report of the National Bankruptcy Review Commission, it has been understood as a mechanism to shift higher earning, can-pay debtors from chapter 7 to chapter 13 and, once there, to compel them to repay as much as reasonably possible to their creditors. Susan Jensen, *A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005*, 79 Am. Bankr. L.J. 485 (2005); *Ransom v. FIA Card Services, N.A.*, 131 S.Ct. 716, 721 (2011) (Congress adopted the means test to help ensure that debtors who can pay creditors do pay them). In light of this policy, the most reasonable interpretation of the BAPCPA amendment to section 1325(b)(1)(B) is that Congress intended to require above-median debtors to provide a longer repayment period than the

3-year minimum required of below-median debtors. Following the Sixth, Eighth, Ninth and Eleventh Circuits, this Court holds that the term "applicable commitment period" defines the temporal duration that a plan must last.[2]

The next issue is whether there is an exception to the temporal minimum set forth in section 1325(b) for debtors with zero or negative projected disposable income. Here the circuits have split. The Sixth Circuit in *Baud* and the Eleventh Circuit in *Tennyson* have held that the five-year term applies equally to those above-median debtors who have zero or negative projected disposable income. The Eighth Circuit in *Frederickson* declined to decide the issue. The Ninth Circuit in *Kagenveama* held that the requirement does not apply if the debtor has zero or negative projected disposable income.

As recognized by the Sixth and Eleventh Circuits, the 3 or 5-year commitment period is a separate and independent calculation from the amount of the monthly plan payment. Official Form 22C embodies that distinction by dealing with each calculation in a separate part or section of the form. As defined in section 101(10A), the applicable commitment period is determined on the basis of historical data – the income received during the six-month prefiling period.[3] It is now clear after *Hamilton v. Lanning* that the plan payments are determined based upon a forward-looking approach. From the standpoint of feasibility, the required monthly plan payment amount is directly affected by the amount of priority claims that must be paid in full under section 1322(a)(2), and the

[2]This result is consistent with the use of the same term in section 1329(c) under which a plan modification "may not provide for payments over a *period that expires* after the *applicable commitment period* under section 1325(b)(1)(B)...." *See In re Dew,* 344 B.R. 655, 661 (Bankr.N.D.Ala. 2006) (reasoning it is impossible to conclude that the term means something other than a defined length of time for payments to be made under a plan).

[3]As noted by the Sixth and Eleventh Circuits, the applicable commitment period "shall be" 3 or 5 years, based solely on the "current monthly income" of the debtor and his spouse, under §§ 1325(b)(4) and 101(10A), not on the debtor having positive projected disposable income. *Tennyson,* 611 F.3d at 877; *Baud,* 634 F.3d at 350.

amount of secured claims that must be paid at full balance (910 claims) or at full collateral value under section 1325(a)(5). The plan payment amount necessary for above-median debtors to obtain confirmation may also be affected by line 59 of Form 22C, if it is a positive number. If line 59 is zero or a negative number, there is no minimum amount that must be paid to general unsecured creditors as a condition of confirmation, so a 0% plan may be permissible, but the 5-year duration requirement for above-median debtors is not affected. *Baud*, 634 F.3d at 351. Line 59 has no effect on the calculation of the applicable commitment period.

The DEBTOR argues that despite what Part II of Form 22C shows, she is not a "true"above-median filer because as of the petition date, she had permanently lost the maintenance income that vaulted her into the above-median category. This argument fails to appreciate that, unlike the forward-looking plan payment determination, the above/below median determination is unambiguously based on the backward-looking approach that focuses on the historical income received prepetition. *See* 11 U.S.C. § 101 (10A). *Hamilton v. Lanning* is of no help to the DEBTOR as it applied the forward-looking approach to the plan payment issue only, not to the above/below-median determination.

The DEBTOR suggests that she could dismiss her case, refile and proceed as a below-median debtor. While this possibility may exist, it is of no help to her in this case. It is a well understood consequence of the 6-month look-back period used in the definition of "current monthly income," that the timing of a petition might very well determine whether a debtor is above or below-median. That debtors might seek to manipulate their

above/below median status by delaying or accelerating the timing of their filing, or even dismissing and refiling, was anticipated and accepted as an inevitable consequence of using a fixed historical time period for income.

The DEBTOR also relies upon *In re Davis*, 439 B.R. 863 (Bankr.N.D.Ill. 2010), holding that the projected disposable income requirement of section 1325(b) is inapplicable outside of the plan confirmation context, so that an above-median debtor's previously confirmed plan could be modified to shorten the term from 60 months to 36 months and to reduce her monthly payments to her actual net monthly income, based upon a post-confirmation change in circumstances. *Davis* is inapposite since it addresses only the separate issue of plan modification under section 1329, and is not inconsistent with this Court's ruling today. Nevertheless, *Davis* highlights the fact that the durational minimum dictated by a debtor's applicable commitment period is a statutory requirement that is imposed at the plan confirmation stage. Post-confirmation developments are dealt with under section 1329. What a debtor may or may not be able to accomplish via plan modification is not material to the interpretation of section 1325(b).

The final argument advanced by the DEBTOR seems to be that regardless of the stated duration of a plan, a negative line 59 permits her to propose and confirm a plan that allows her to stop paying the monthly plan payments and declare the plan completed after priority and secured claims are fully paid even if the plan period has not fully elapsed. Chapter 13 plans are confirmed on the premise of regular monthly plan payments for the full term of the plan, unless 100% payment occurs earlier. A step-down in payments to $0

once secured and priority claims are paid based solely on a negative number on line 59 is a novel proposition that would run afoul of other applicable confirmation standards. This Court has never seen such a plan, but at least two courts have rejected similar proposals. *In re Timothy,* 442 B.R. 28 (10th Cir.BAP 2010) (Bankruptcy Code does not permit debtors to propose a plan without a minimum term); *In re Kidd,* 374 B.R. 277 (Bankr.D.Kan. 2007) (proposed plans could not be confirmed where debtors purported to reserve early-out right to emerge from chapter 13 prior to conclusion of applicable 3 or 5-year commitment period, simply by paying creditors what they otherwise might have received, but less than 100%, over the applicable commitment period). This Court agrees with those opinions. A debtor's "best efforts" are expected for the plan's duration unless shortened through postconfirmation modification.

The DEBTOR'S actual ability to make plan payments is a critical element of the confirmation process. *Hamilton v. Lanning* instructs that the monthly disposable income amount calculated on line 59 of Form 22C is only a starting point and that adjustments are to be made for changes that are known or virtually certain as of the time of confirmation.[4] Unanticipated changes that occur after confirmation may be addressed via a plan modification under section 1329 or, in extreme situations, in a motion for a hardship discharge under section 1328(b). The DEBTOR'S hypothetical suggestion conflates the distinction between the use of the means test to establish the duration of the plan, the applicable commitment period as determined by the debtor's historical income, and the use

[4]Rejecting the mechanical approach to determining a chapter 13 debtor's projected disposable income, the court noted that where the debtor's income increases postpetition the mechanical approach would "deny creditors payments that the debtor could easily make," characterizing that as a "senseless result" that Congress could not have intended. *Hamilton v. Lanning,* 130 S.Ct. at 2475-76.

of the means test as the starting point in the determination of the required plan payment amount based upon projected disposable income, a forward looking concept.

Moreover, chapter 13 has always been intended as an option for those debtors who have a good faith desire to pay their creditors to the fullest extent possible over a period of years from future income. The good faith inquiry asks of the debtor: "Is he really trying to pay the creditors to the reasonable limit of his ability or is he trying to thwart them?" *In re Smith,* 286 F.3d 461, 466 (7th Cir. 2002). Chapter 13 debtors are expected to make their best efforts at repaying all of their creditors, including general, unsecured creditors. *In re Dolgin,* 2011 WL 2709059 (Bankr.N.D.Cal.); *In re Pearson,* 398 B.R. 97, 105 (Bankr.M.D.Ga. 2008). Debtors who wish to pay their creditors as little as possible or who wish to avoid working for the benefit of their creditors for a plan period of three to five years, should not choose chapter 13 and instead seek relief under chapter 7. These long-standing principles were not eradicated or eroded by BAPCPA.

All above-median debtors are required to propose a 5-year plan as a condition of confirmation, a requirement that is dependent upon the facts existing on the petition date.[5] That the same debtor, with a slightly different filing date, might be able to propose and confirm a 3-year plan or might later be able to shorten the duration or pay off the plan early via plan modification, gives no pause. The inflexibility of the 6-month income look-back period is an inevitable consequence of using the means test in chapter 13 cases. The

---

[5]Construing the statute to provide for an exception to the 5-year term required of above-median filers for those with zero or negative disposable income on line 59 would impermissibly create an unwritten exception to the broadly stated rule chosen by Congress. *Freytag v. C.I.R.,* 501 U.S. 868, 874, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (courts are not at liberty to create a statutory exception where Congress has declined to do so); *Crawford v. Indiana Dept. of Corrections,* 115 F.3d 481, 484 (7th Cir. 1997).

acceptance of seemingly harsh or irrational results in some cases due to that inflexibility is the trade-off that Congress knowingly made when it chose to implement the means test in chapter 13 in the hopes of achieving, in its view, better results in most cases.

**CONCLUSION**

In agreement with *Baud, Tennyson, Frederickson* and *Kagenveama,* this Court holds that the "applicable commitment period" as that phrase is used in section 1325(b) establishes a temporal or durational standard for plan confirmation purposes, once an objection is filed. In agreement with *Baud* and *Tennyson,* this Court also holds that a chapter 13 debtor who is above-median status under the means test calculation, is required as a condition of confirmation to propose a plan with a durational term of five years, without exception for zero or negative projected disposable income.

The rule laid down by *Hamilton v. Lanning,* that adjustments may be made for changes to a debtor's income and expenses that are known or virtually certain as of confirmation, applicable to the projected disposable income determination, does not apply to the "applicable commitment period" determination, which is determined by the historical information referred to in section 101(10A). A loss of income is properly taken into account in determining projected disposable income, but must be ignored for purposes of determining a debtor's above/below-median status and the "applicable commitment period."

The objection to confirmation filed by BRIAN will be allowed and confirmation of the Amended Plan will be denied. The DEBTOR will be given twenty-one (21) days to file

a Second Amended Plan providing a term of 60 months which may address any anticipated change in her income due to pension payments or otherwise.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

###